## William C. Ogden v. Edward C. Ogden, E. J. Ogden, Executor, M. D. Ogden, William Grinton, Trustees; Albert P. Stevens, Jacob Glos, The Mutual Loan and Building Association and Bridget Corcoran.

1. QUESTIONS OF FACT—*Opportunities of the Chancellor.*—The chancellor, who hears the cause in the court below, sees the witnesses and hears them testify, has better opportunities to judge of their credibility than this court, and much weight should therefore be given to his findings, and this court ought not to set it aside unless it clearly appears that his conclusions were wrong and contrary to the evidence.

2. MORTGAGE—*Must Disclose the Real Nature of the Indebtedness it Secures.*—A mortgage must disclose with as much certainty as possible the real character of the indebtedness, and if it is given to secure an existing or future liability, the foundation of such liability should be set forth.

3. SAME—*What the Record Must Disclose.*—The record of a mortgage must disclose, with as much certainty as the nature of the case will permit, the real state of the incumbrance.

4. SAME—*The Debt Is the Principal Thing.*—The debt is the principal thing, and the mortgage is but an incident.

5. ABSTRACT —*Additional—When Made by Adverse Party—Costs.*— Where the abstract filed by appellant does not sufficiently set forth the

Ogden v. Ogden.

evidence, the appellee may file an additional abstract and enter a motion to have the costs thereof taxed against the appellant.

**Foreclosure.**—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 14, 1898.

CHAS. B. STAFFORD, attorney for appellant.

MORRILL SPRAGUE, attorney for appellees.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was a bill in equity to foreclose a mortgage executed by Edwy C. Ogden to E. J. Odgen, "executor of the estate of Samuel G. Ogden, deceased."

The bill sets out the mortgage, together with a formal assignment thereof to the complainant (appellant here), and also the note alleged to be secured thereby; which note and mortgage purport to bear even date, to wit, June 1, 1887, and the mortgage was duly recorded in the recorder's office of Will county, Illinois, on June 2, 1887. The mortgaged premises are described as lot 8 in block 1, School Section addition to Joliet, and lot 3 in Chase subdivision of block 85 in the same addition, all situated in Joliet in said Will county. The note, as described in the mortgage, was executed by E. C. Ogden, payable to the order of himself and by him indorsed and delivered, due three years after date, for principal sum of $1,697.50, with interest thereon from date until paid, at the rate of eight per cent per annum payable semi-annually.

On February 23, 1889, Edwy C. Ogden and wife conveyed to George J. Monroe, by warranty deed in statutory form, said lot 3 in Chase subdivision above described. Monroe made improvements on the lot and executed a mortgage to the Mutual Loan and Building Association of Joliet, and thereafter sold and conveyed the property to Bridget Corcoran (one of the appellees), subject to the last mentioned mortgage, the deed of conveyance last described being dated October 16, 1890, and which was duly recorded October 26, 1890.

On July 15, 1892, Edwy C. Ogden and wife by trust deed of that date, conveyed said lot eight in block one above described, to William Grinton as trustee, to secure the payment of a note made by said Edwy C. Ogden payable to his own order and by him indorsed to Henry K. Stevens, for the sum of $6,000; which trust deed was recorded July 16, 1892, among the records of said Will county.

Prior to the decree in this cause, the Grinton trust deed had been foreclosed in equity, and the property sold to Albert P. Stevens, who holds the certificate of purchase and is one of the appellees herein.

The defendants to the bill in this cause were Edwy C. Ogden, E. J. Ogden, executor, M. D. Ogden, William Grinton (trustee), Albert P. Stevens, Jacob Glos, The Mutual Loan and Building Association, and Bridget Corcoran.

Defaults were entered against Edwy C. Ogden and the Loan and Building Association; E. J. Ogden and M. D. Ogden entered their appearance and consented to the entry of a decree as prayed in the bill.

Answers were filed by Albert P. Stevens, William Grinton and Bridget Corcoran, and the bill was dismissed as to Jacob Glos.

The answer of Albert P. Stevens sets up the mortgage or trust deed executed by Edwy C. Ogden to Grinton, and alleges that he, Stevens, has ever since been the owner of the note thereby secured, and is entitled to the benefit of said trust deed; that he, Stevens, at the time of the execution of said trust deed had no knowledge of the existence of the mortgage involved in this suit; that the note described in complainant's bill and set forth by copy in Exhibit "A" is not the note described in such mortgage, and is not secured by said mortgage, and denies that said mortgage is any lien upon said lot eight, or a lien valid and superior to that of the defendant; and avers that he is informed and believes there never was any such indebtedness or note as is described in the mortgage in the complainant's bill, and that for want of such indebtedness the said mortgage never became a lien

upon said lot eight prior to the security of the defendant, but that if it is a lien it is secondary to that of the defendant. Also alleges that the note set out in the copy attached to the bill was not executed on the day of its purported date, but on or about July 1, 1893, subsequent to the execution of the note and trust deed of the defendant Stevens; avers that E. J. Ogden as executor had no authority to take said mortgage as security for a debt to the estate of S. G. Ogden, and no right to assign or transfer it, and that complainant derived no title to said note and mortgage and has no right to maintain this suit.

The answers of Grinton and Bridget Corcoran are similar to that of Stevens, and set up substantially the same defense. The cause was heard by the chancellor upon testimony and documentary evidence produced and offered in open court, and a decree was entered sustaining the defenses set up in the answers of Stevens and Corcoran.

The court found from the evidence that at the time of the execution and delivery of the mortgage in suit from Edwy C. Ogden to E. J. Ogden no note of any kind or character was made, executed, indorsed or delivered to the mortgagee, and that the said Edwy C. was not at the time of making said mortgage, in truth and in fact indebted to said E. J. Ogden or to the estate of Samuel G. Ogden in the sum of $1,697.50, or in any sum whatever.

It is further found from the evidence that Edwy C. Ogden conveyed to George J. Monroe, and that Monroe conveyed to Bridget Corcoran said lot three above described, by warranty deed in statutory form, for a good and valuable consideration, and that at the time of the execution of the deeds neither Monroe nor Bridget Corcoran had actual knowledge of the existence of the mortgage in suit. Similar findings are made as to the trust deed to Grinton, and the want of knowledge of the trustee, Grinton, H. K. Stevens and Albert P. Stevens, as to the mortgage from Edwy C. to E. J. Ogden.

The court further finds from the evidence that in 1893, some time after the Grinton trust deed was executed, said

Edwy C. Ogden made and delivered to E. J. Ogden the promissory note set out in the complainant's bill as being secured by the mortgage sought to be foreclosed in this suit, but that at the time of the actual making of said note said Edwy C. Ogden was not indebted to E. J. Ogden or to the estate of Samuel G. Ogden, deceased, in any sum whatever, but by the giving of said note said Edwy C. Ogden assumed to pay and became liable for a debt of his father, Marshall B. Ogden, then deceased, to the estate of Samuel G. Ogden for said amount, and that such indebtedness was the only consideration therefor; that said note was, on August 14, 1893, indorsed by E. J. Ogden and delivered to the complainant. There are also findings as to the Grinton trust deed, the foreclosure thereof, the sale of the premises and purchase of the same by Albert P. Stevens, the issue of a certificate of purchase to him by the master in chancery, and the approval of the master's report of sale, not necessary to be further set out in detail.

The court decreed that as to Bridget Corcoran and lot three, of which she was the owner of the equity of redemption, the bill should be dismissed for want of equity; and that as to lot eight in block one, the trust deed by Edwy C. Ogden to William Grinton as trustee, was a valid, prior and superior lien to that of complainant's mortgage, and that the latter attached to and became a lien on only such equity of redemption as the said Edwy C. Ogden had in said lot eight after the execution of the trust deed to Grinton; that as to the defendants William Grinton and Albert P. Stevens, the bill be dismissed for want of equity.

The court further found that there was due from Edwy C. Ogden to the complainant upon the note and mortgage set up in the bill, the sum of $2,485.30, which said Edwy C. Ogden was decreed to pay to complainant on or before May 10, 1898, with five per cent interest and such costs as were subsequently provided for in the decree, and that in default of such payment the right, title and interest of said Edwy C. Ogden, remaining in him after the Grinton trust deed was

Ogden v. Ogden.

executed and delivered, in and to said lot eight in block one should be sold by the master in chancery to satisfy the decree, which also contained the usual provisions as to foreclosure of mortgages, sales thereunder and redemption therefrom. From this decree appellant William C. Ogden prosecutes this appeal. On the granting of the prayer for appeal to this court the Circuit Court entered an order impounding the note and mortgage offered in evidence by complainant and incorporating the original in the certificate of evidence sent to this court, so that we might have the benefit of an inspection thereof.

The first point made by counsel for appellant is that the court admitted improper evidence, but the only matters complained of are the introduction of the records as to the foreclosure of the Grinton trust deed, and the testimony of Edwy C. Ogden, which it is said is in contradiction of his mortgage, an instrument under seal.

We think there was no error in admitting the record of the foreclosure proceedings. This was necessary to show the rights of appellee Albert P. Stevens in a part of the premises sought to be affected in this suit. Those rights depended primarily on the Grinton trust deed; it would therefore seem proper to show its foreclosure, and appellant could not have been harmed by the admission of that evidence.

Nor do we see any impropriety in admitting the testimony of Edwy C. Ogden as to the facts concerning the execution and delivery by him of the note and mortgage to E. J. Ogden. It is a mistake to say this testimony is in contradiction of the mortgage. Edwy C. Ogden nowhere denies giving the mortgage, nor does he attempt to contradict or vary its terms in any way. He does deny giving a note contemporaneously with the mortgage, and he attempts to state the reasons why the mortgage was given and the circumstances surrounding the transaction. We hold that the evidence was entirely proper under the pleadings, and there was no error in admitting it.

All the other assignments of error, save one, are embraced

in and covered by, the fifth, which is, that " the findings of the court are contrary to the law and the evidence." To this question we have given patient and careful consideration and reached the conclusion that this error is not well assigned.

The evidence shows that Edwy C. Ogden is a grandson of Samuel G. Ogden, late of Rockford, Illinois, deceased, who departed this life leaving a last will and testament, by which he gave a life estate in his property to his wife, Sarah Ogden, the remainder to be divided upon her death between their four sons, viz.: Marshall B. Ogden, William C. Ogden, E. J. Ogden and M. D. Ogden, who were named as executors of the will. After the death of his father, and during the life of his mother, Marshall B. Ogden (the father of Edwy C. Ogden), borrowed from the estate the sum of $1,697.50, as shown by his promissory note, which appears in the evidence. This note was payable six months after the death of Sarah Ogden, and was secured by the assignment as collateral of two mortgages on the property of Marshall B. Ogden in Joliet, Illinois. Marshall B. Ogden died in 1886, leaving the note, not yet due, as a debt to the estate of Samuel G. Ogden, deceased.

Edwy C. Ogden was the only son and heir of Marshall B. Ogden, and among the property inherited by him from his father was the property covered by the mortgages so assigned as collateral as above stated.

After the death of his father and during the life of his grandmother, said Sarah Ogden, Edwy C. Ogden paid the interest to her upon the $1,697.50 note given to the estate by his father. The contention of appellant is, that Edwy C. Ogden executed the note and mortgage involved in this suit, to take up and pay the note of the same amount given by his father to the estate. There is no controversy that the mortgage sought to be foreclosed here was executed and delivered about the time it bears date, to wit, June 1, 1887, but it is insisted by appellees that no note was given, nor was there in fact any indebtedness at that time from Edwy C. Ogden to E. J. Ogden, or to the estate of Samuel

G. Ogden, deceased. We have not found this question entirely free from difficulty. There is certainly a sharp contradiction in the evidence as to the reasons for giving the mortgage, the circumstances under which it was executed, and whether or not a note was given contemporaneously with the mortgage. The only two parties to the transaction at the time the mortgage was executed were examined as witnesses in the cause. The testimony of E. J. Ogden, the mortgagee, is not so clear and satisfactory as might be desired. He swears, as a matter of recollection, that the note and mortgage came to him in a letter. That he can't tell when the note was executed, and does not remember receiving it. That he simply remembers receiving the papers and supposes he got the note with them, but does not remember when he got the note. Being called in rebuttal after Edwy C. Ogden had testified upon the same subject, the witness further testified that after the death of his mother, Sarah Ogden, he looked for the note and could not find it. That he then saw Edwy C. Ogden about it, and the latter said he had it in his desk and had forgotten to send it. That the note had previously been in his (E. J. Ogden's) possession, but that he had let Edwy C. Ogden take it, so as to have the dower of the latter's wife released in the mortgaged premises.

The only other witness on this subject for complainant was the complainant himself, who testified that in 1893, Edwy C. Ogden told him (witness) that he had gotten the note from E. J. Ogden and forgotten to return it. That Edwy C. Ogden gave witness a note to give to E. J. Ogden, which he represented as the one he had obtained from E. J. Ogden. This was before the assignment of the note and mortgage to the witness, and he does not know whether it is the note sued on or not.

On the other hand, Edwy C. Ogden testifies positively that he never gave or made the note described in the mortgage, but that the note offered in evidence was written in 1893, after the death of his grandmother; that there was no note made at the time the mortgage was executed and

delivered; that the note in suit was made six years after that time, and was the only note he had ever given to represent or take the place of the indebtedness of his father to his grandfather's estate, and in fact was the only note he had ever given to E. J. Ogden, executor, etc. He further testifies that the mortgage was made because he feared some financial troubles in the future, and he wanted to protect the property, and without objection he further testified that before his father died he was informed by him that the indebtedness of Marshall B. Ogden to the estate of Samuel G. Ogden would never have to be paid because the share of Marshall B. or Edwy C., his son and heir in the estate of Samuel G. Ogden, would be sufficient to take care of it. That he never knew to the contrary until after the death of his grandmother in 1893, when the executors called upon him to pay the debt so that the estate could be settled, and on inquiry of the county judge of Winnebago county he found that the share of Marshall B. Ogden in the estate of Samuel G. Ogden reverted to the other brothers upon the death of said Marshall B., and that the witness then for the first time assumed the payment of his father's indebtedness to the estate by executing the note involved in this suit, which was dated back, or ante-dated, so as to correspond with the date of the mortgage. If this testimony of Edwy C. Ogden is true, then the contention of appellees that there was no indebtedness from Edwy C. Ogden to E. J. Ogden at the time of the execution of the mortgage must prevail. The chancellor who heard this case in the court below saw the witnesses and heard them testify; he therefore had better opportunities of judging as to their credibility than we have, and much weight should therefore be given to his findings and decision upon that question, and we ought not to set it aside unless it clearly appears his conclusions were wrong and contrary to the evidence. But aside from this testimony of living witnesses, an inspection of the note and mortgage which we have before us reveals strong corroborative evidence as to the truth of Edwy C. Ogden's version of the transaction. Without going particularly into

details we think it safe to say that no candid person can examine carefully the note and mortgage now before us and come to any other conclusion than that arrived at by the court below, to wit, that they were not made contemporaneously with each other. It is admitted they were written by Edwy C. Ogden and are both in his handwriting and yet there are such marked differences in the formation of the same letters in the two instruments that it is impossible to believe the same person wrote them at the same time. But these differences would be readily explained if a period of six years intervened between the writing of the two instruments, as is testified to by Edwy C. Ogden. Then again, the mortgage is old and worn, so that it has to be held together by cloths pasted over the worn creases while the note has the appearance of being comparatively new. And further, the note produced is not the note described in the mortgage. It is scarcely likely that if the two papers were drawn at the same time the scrivener would describe in the mortgage a note payable to the order of the maker, and then draw the note payable to the order of another person designated as executor; or, if the note were drawn first, to immediately give a wrong description of it in the mortgage. True, all these things may have possibly happened, but are not likely to have occurred, and as we are to judge of probabilities where the evidence is conflicting, they are circumstances to be considered, and we regard them as no doubt did the learned chancellor below, as sufficient to turn the scale in favor of the truthfulness of Edwy C. Ogden's testimony.

There is another circumstance which would seem rather significant, and that is that the note of Marshall B. Ogden to the estate was not surrendered to Edwy C. Ogden when it is claimed he gave the note and mortgage in suit to pay and satisfy it, but it still remained in the hands of E. J. Ogden, as executor, at the time this cause was heard in the court below. It is not pretended that Edwy C. Ogden was indebted on his own account to the estate of Samuel G. Ogden, or to E. J. Ogden, as executor or as an individual,

for the sum mentioned in the note described in the mortgage, or in any other sum.   The only consideration for the note was the alleged indebtedness of Marshall B. Ogden, the father of Edwy C. Ogden, which would be clearly sufficient when that note was given; but until the note was in fact given, or Edwy C. Ogden had rendered himself liable for his father's debt in some one of the ways recognized by the laws of this State, the debt of the father would not be the debt of the son.   If, therefore, the note was not given until 1893, then, and then only, had Edwy C. Ogden become liable to pay the debt, because the mortgage itself contained no reference to any indebtedness except that mentioned in a note which had no existence.   We think, therefore, the mortgage was not a lien as against subsequent purchasers or creditors.

The recording laws of this State require that the record of a mortgage shall disclose, with as much certainty as the nature of the case will permit, the real state of the incumbrance.   Metropolitan Bank v. Godfrey et al., 23 Ill. 579.   It has been held that the lien of a chattel mortgage can not be extended so as to become a lien for other and different indebtedness than that described in and professed to be secured by the mortgage.   Morris v. Tillson, 81 Ill. 607. We see no reason why the same principle is not applicable to a mortgage on real estate.

In Branhall v. Flood, 41 Conn. 68, a mortgage described the mortgage debt as a note of $1,000.   No such note had been given, but the mortgagor was indebted to the mortgagee for goods sold to the amount of $756, and the latter had agreed to furnish additional goods up to the amount of $1,000, and the mortgagor had offered to give him security for the whole, and made this mortgage for that purpose. But it was held that the mortgage was void against a subsequent attaching creditor.   Applying these principles to the case at bar, it must be held that the mortgage in suit did not properly, or sufficiently, describe an existing indebtedness, so as to make it valid or binding as against subsequent purchasers or mortgagees.

Concluding, then, that the decree is right in finding that the mortgage in question was not given to secure any existing indebtedness, and that no indebtedness was sought or intended to be thereby secured until long after the rights of appellee intervened, it seems to us the further finding that the rights of appellant were subordinate to those of appellees, must be upheld. It is true the mortgage was on record when appellees' rights accrued, but it recited an indebtedness which had no existence. Appellant became an assignee of the mortgage something like four years after the conveyances under which appellees claim were placed upon the records. The decisions are numerous to the effect that the debt is the principal thing, and the mortgage is but an incident. Appellant could obtain no greater rights by an assignment of the mortgage than the mortgagee himself had. He could have ascertained by inquiry, before purchasing, what the facts were, both as to the indebtedness purporting to be secured by the mortgage, as well as the claims of appellees. Not having chosen to do this, we fail to see wherein his equities are in any way superior to those of appellees.

The only remaining assignment of error necessary to be considered is, that the decree is inconsistent and in conflict with itself, in that, while finding in favor of appellees against the mortgage, it yet finds in favor of appellant, on the same mortgage, against Edwy C. Ogden. We do not so regard it. Edwy C. Ogden now acknowledges the indebtedness as having come into existence upon the giving of the note in 1893, and so far as he is concerned, therefore, it was not improper to decree the foreclosure of the mortgage on whatever equity he might still retain in the property.

This is certainly a matter of which appellant has no cause to complain, and in our view is not inconsistent with the other parts of the decree. Our conclusion is that the decree is right and should be affirmed.

Claiming that the abstract filed by appellant did not sufficiently set forth the evidence, appellees filed an additional

abstract and have entered a motion to have the costs thereof taxed against appellant. An examination of the record and abstracts filed satisfies us that the appellees were justified in filing the additional abstract, and the motion will therefore be sustained and the cost of such additional abstract will be taxed against appellant. Decree affirmed.

Presiding Justice DIBELL, having heard this cause in the court below, takes no part here.